UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARK CHEATWOOD, et al.                                                              PLAINTIFFS

v.                                        No. 2:19-CV-02088

DR. DANIEL MWANZA, et al.                                                          DEFENDANTS

**OPINION AND ORDER**

Before the Court is Separate Defendant Fort Smith HMA, LLC's ("Fort Smith HMA") motion (Doc. 59) for partial judgment on the pleadings and brief in support (Doc. 60). Plaintiffs filed a response (Doc. 61).[1] Fort Smith HMA filed a reply (Doc. 64) and Plaintiffs filed a surreply (Doc. 67). For the reasons set forth below, the motion will be DENIED.

**I.    Background**

Plaintiffs Mark Cheatwood ("Mr. Cheatwood") and Caryl Cheatwood ("Mrs. Cheatwood") filed this action against Fort Smith HMA, LLC, Dr. Daniel Mwanza, and Dr. Michelle Horan alleging claims for medical malpractice, violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), respondeat superior, and loss of consortium. On July 10, 2017, Mr. Cheatwood was operating a boom truck to "lift a pump off a flatbed trailer parked on or near a one-lane bridge." (Doc. 33, p. 6). Because the bridge was narrow, Mr. Cheatwood could not extend the outriggers needed to stabilize the truck. As Mr. Cheatwood was lowering the pump into position, the weight of the pump caused the boom truck to tilt sideways over the bridge railing and Mr. Cheatwood was thrown nearly thirty to forty feet into the floodway. As a result of the

---

[1] Plaintiffs filed their response seven days after the deadline and in their response stated the deadline to file their response was extended by agreement of the parties. The Court did not extend Plaintiffs' deadline to file, nor did Plaintiffs request an extension from this Court under Fed. R. Civ. P. 6(b). Despite the Plaintiffs' failure to request an extension from this Court, the Court has considered Plaintiffs' response as if it were timely filed.

1

fall, Mr. Cheatwood sustained several injuries, including a left ankle compound fracture, right ankle fracture and dislocation, spine fractures from L1 to S1, left wrist fracture, sternum fracture, a liver laceration, and brain bleeding.

Mr. Cheatwood was taken to Sparks Regional Medical Center ("Sparks") around 8:00 a.m. Plaintiffs allege Mrs. Cheatwood arrived at Sparks and found Mr. Cheatwood in an emergency room with "approximately 3 inches of bone sticking out through his boot top . . . ." (Doc. 33, p. 8). Mr. Cheatwood claimed he could not feel anything from the waist down and alleges his wounds had been "half-heartedly cleaned." *Id.* Mrs. Cheatwood repeatedly requested Doctors Horan and Mwanza and other staff members to transfer her husband to Tulsa, Oklahoma, but each request was denied. Despite his severe injuries, Plaintiffs allege the Sparks' staff only superficially cleaned his wounds and made no efforts to treat his injuries.

Shortly before 5:00 p.m., the Sparks' staff allegedly made the call to have Mr. Cheatwood flown to the University of Arkansas for Medical Sciences ("UAMS") in Little Rock, Arkansas. Once he arrived at UAMS, the medical staff there amputated Mr. Cheatwood's left leg and stated the amputation would not have been necessary if the staff at Sparks would have transferred Mr. Cheatwood earlier. Plaintiffs claim Sparks violated EMTALA by failing to stabilize or transfer Mr. Cheatwood. Fort Smith HMA argues it is entitled to judgment on the pleadings for Plaintiffs EMTALA claim because the complaint does not allege Sparks was a Medicare provider and there is no allegation that there was a lack of uniform treatment and disparate impact. Further, it argues that the complaint alleges the Cheatwoods gave informed consent for Mr. Cheatwood to be transferred and this informed consent defeats an EMTALA claim.

II.     **Legal Standard**

When considering a Rule 12(c) motion for judgment on the pleadings, the Court uses the

same standard as that for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Ashely Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Judgment on the pleadings is appropriate "only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2009).

## III. Discussion

At the outset, the Court notes Plaintiffs' response and surreply contained several factual statements, and even portions of medical records, that were not in the complaint. On a motion for judgment on the pleadings, if matters outside the pleadings are presented and not excluded by the Court, the motion is converted to one for summary judgment. Fed. R. Civ. P. 12(d). The Court has not considered facts and documents that were not in the pleadings, therefore, the motion has not been converted to a summary judgment motion.

EMTALA applies to hospitals that have executed a provider agreement under the Medicare program. *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1136 (8th Cir. 1996). The purpose of EMTALA was to address the problem of patient dumping, where hospitals would refuse to accept to treat patients in an emergency room if the patients did not have health insurance. *Id.*

at 1136-37. EMTALA requires hospitals to screen and stabilize patients who come to the emergency room. *Id.* Under a failure to screen claim a plaintiff must show a hospital did not apply the same screening procedures to him that the hospital applies to similarly situated patients, and that this had a disparate impact on the plaintiff. *Id.* Patients are not entitled to correct or non-negligent treatment under EMTALA, but rather to be treated the same as other similarly situated patients. *Id.*

EMTALA also requires a hospital to provide the treatment required to stabilize the patient or transfer a patient if the hospital determines the patient has an emergency medical condition. *Id.* at 1140. "Emergency medical condition" is defined in the statute as:

> (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in (i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1395dd(e)(1)(A). A plaintiff must show the hospital actually knew that the patient suffered from an emergency medical condition. *Summers*, 91 F.3d at 1140.

Here, Plaintiffs have alleged facts sufficient to state a failure to stabilize claim under 42 U.S.C. § 1395dd(b)(1). The complaint alleges Mr. Cheatwood was taken to Sparks with a compound fracture, ankle and wrist fractures, spine fractures, sternum fracture, liver laceration, and brain bleeding. Because of the compound fracture, Mr. Cheatwood's bone was sticking out of his boot while he was at Sparks. These allegations are enough at this stage to demonstrate Mr. Cheatwood had an emergency medical condition and that the hospital knew he had an emergency medical condition. *Pennington-Thurman v. Christian Hosp. Ne.*, 4:18-CV-162, 2019 WL 5394500, at *6 (E.D. Mo. Oct. 22, 2019); *Beelek v. Farmington Mo. Hosp. Co., LLC*, 4:10-CV-2068, 2011 WL 4008018, at *2-3 (E.D. Mo. Sept. 8, 2011) ("These allegations of [the decedent's]

4

obvious and serious physical distress plausibly support plaintiffs claim that the hospital knew that [the decedent] suffered from an emergency medical condition under § 1395dd(b)."). Because of this emergency medical condition, the hospital was required either to stabilize Mr. Cheatwood or transfer him to a different hospital. However, the complaint alleges Sparks only superficially cleaned Mr. Cheatwood's wounds and did not stabilize or transfer him for eight hours. Accepting all the allegations in the complaint as true and drawing reasonable inferences in favor of the nonmoving party, the Court finds Plaintiffs sufficiently alleged the hospital knew Mr. Cheatwood had an emergency medical condition and did not stabilize or transfer Mr. Cheatwood.

Fort Smith HMA argues the plaintiffs have not shown a lack of uniform treatment and disparate impact, however, plaintiff's claim is one for failure to stabilize and not failure to screen. It is a failure to screen claim that requires lack of uniform treatment not failure to stabilize. *Summers*, 91 F.3d at 1136-40 (explaining plaintiffs must show non-uniform or disparate treatment in failure to screen claims because of the word appropriate in the statute).

Fort Smith HMA further argues the complaint fails to state an EMTALA claim because the complaint does not allege Sparks was a Medicare provider. Although the complaint does not state Sparks was a Medicare provider, the complaint alleges Mr. Cheatwood was taken to Sparks Regional Medical Center where he was in the emergency room from around 8:00 a.m. to 5:00 p.m. The Court notes Fort Smith HMA does not affirmatively argue Sparks was not a Medicare provider. Instead, Fort Smith HMA argues Plaintiffs have simply failed to state it was not a Medicare provider. Based on Sparks' location, the number of hospitals in the region compared to the regional population, and the people known to the Court who have Medicare coverage and have gone to Sparks for treatment, not only at the time of injury but before and after, the Court finds it is reasonable to infer that Sparks was a Medicare provider at the time of the injury.

Fort Smith HMA's final argument is that the complaint does not state a cause of action because the complaint "alleges that, upon informed consent by Mr. Cheatwood and his wife, who the complaint alleges was a nurse, the hospital did transfer the patient to UAMS . . ." and informed consent alleviates a hospital's duty to stabilize prior to transfer. However, the complaint does not contain any allegations that Mr. or Mrs. Cheatwood gave informed consent for Mr. Cheatwood to be transferred to UAMS. Instead, the complaint states that once Mrs. Cheatwood arrived to Sparks she demanded Mr. Cheatwood be taken to Tulsa, Oklahoma and allegedly repeated this demand throughout the day. Fort Smith HMA is drawing inferences, in its own favor, and concluding that because the complaint states Mrs. Cheatwood had previously demanded that her husband be transferred to Tulsa, the hospital received informed consent to send Mr. Cheatwood to UAMS. Discovery may reveal that informed consent was given, but facts found during discovery are for a motion for summary judgment, not a motion for judgment on the pleadings. Plaintiffs have alleged facts sufficient to state an EMTALA claim for failure to stabilize.

IT IS THEREFORE ORDERED that Defendant's motion (Doc. 59) is DENIED.

IT IS SO ORDERED this 28th day of February, 2020.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE